UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VIRGINIA MASON HOSPITAL,

    Plaintiff,

v.

WASHINGTON STATE NURSES ASSOCIATION,

    Defendant.

No. C05-1434MJP

ORDER ON THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

    This matter comes before the Court on the parties' cross-motions for summary judgment. (Dkt. Nos. 6 and 12). Plaintiff Virginia Mason Hospital ("VMH") filed this case as an application to vacate an arbitration award where the arbitrator ruled that VMH's attempt to unilaterally implement a mandatory vaccination policy among its staff could not be enforced under the terms of the parties' collective bargaining agreement. Plaintiff argues that, in making this ruling, the arbitrator exceeded the scope of his authority, ignored the plain language of the contract, and violated public policy. Defendant Washington State Nurses Association ("WSNA"), on the other hand, brings a motion for this Court to uphold the arbitrator's award. Because the Court does not find that the arbitrator's decision is procedurally defective, the Court upholds the award and must DENY Plaintiff's Motion, while GRANTING Defendant's Motion. There is no evidence showing that VMH brought this motion for frivolous or vexatious reasons, however, so the Court DENIES Defendant's request for a grant of attorney's fees.

ORDER - 1

# BACKGROUND

In September 2004, VMH announced its decision to implement a policy of mandatory 100% flu vaccination among its staff. As reasons for this decision, VMH cited the acute vulnerability of its patients, many of whom are elderly, and the fact that its previous policy of encouraging voluntary vaccination only resulted in 55% of its staff being vaccinated. VMH made vaccination with the flu vaccine a "fitness for duty" requirement for its registered nurses. The nurses, represented by WSNA, filed a grievance regarding the implementation of this policy. Due to the vaccination shortage in 2004, VMH refrained from implementing this new policy immediately, but planned to do so for the 2005 flu season. The CBA between VMH and WSNA provides for arbitration of grievances that cannot be resolved otherwise. Under Article 16, Step 4 of the CBA,

> [t]he arbitrator's decision shall be final and binding on all parties, and shall not be reviewed by a court. The arbitrator shall have no authority to add to, subtract from, or otherwise change or modify the provisions of this Agreement but shall be authorized only to interpret existing provisions of this Agreement as they may apply to the specific facts of the issue in dispute. . ."

(Def's Submission, "Relevant Contract Provisions").

The dispute over the mandatory vaccination issue went to arbitration in front of arbitrator Eduardo Escamilla on June 1, 2005. After reviewing the parties' briefs and hearing argument on the issue, Arbitrator Escamilla issued a decision in favor of the WSNA. The issue is now before this Court whether or not the arbitrator exceeded the scope of his authority, disregarded the language of the CBA, or rendered a decision that runs counter to public policy.

# ANALYSIS

## I. Standard of Review for Arbitration Decisions

Courts typically defer to arbitrators' decisions and are required to not overturn an arbitrator's judgment regarding the merits of the claim, even if the Court would have made a different decision. Southern California Gas Co. v. Utility Workers Union of America, 265 F. 3d 787, 794 (9th Cir. 2001). So long as the arbitrator's interpretation of the CBA is plausible, it should stand. Phoenix Newspapers, Inc. V. Phoenix Mailers Union Local 752, 989 F. 2d 1077, 1080 (9th Cir. 1993).

ORDER - 2

However, this deference is not a mere rubber stamp.  Although Courts may not disturb the result of an arbitration for an error of law or fact, Courts do monitor the procedural integrity of the arbitration mechanism to make sure that arbitrators do not exceed the scope of contractual authority they are given under a CBA.  <u>Hawaii Teamsters and Allied Workers Union, Local 996 v. United Parcel Service</u>, 241 F. 3d 1177, 1181 (9th Cir. 2001), <u>see</u> also <u>Phoenix Newspapers,</u> 989 F. 2d at 1080 (9th Cir. 1993). Arbitral authority is both derived from and limited by the CBA.  <u>Barrentine v. Arkansas-Best Freight System, Inc.</u>, 450 U.S. 728, 744 (1981). For this reason, arbitrators are bound to base their decisions on the essence of the CBA and not to distribute their own brand of industrial justice, gleaned from extraneous statutory authorities or their own ideas of fair play and equity. <u>United Steelworkers of America v. Enterprise Wheel and Car Corp.</u>, 363 U.S. 593, 596 (1960), <u>see</u> also <u>Barrentine</u>, 450 U.S. at 744 (1981).  The purpose of arbitration is to give effect to the contractual agreement of the parties through a stabilizing and efficient form of industrial dispute resolution.  To allow arbitrators to stray from interpreting the contract presented to them would undermine this goal.  In the Ninth Circuit an arbitration award may be vacated if the award does not draw its essence from the CBA, if the arbitrator exceeds the scope of the issues submitted, or if the award runs counter to public policy. <u>SFIC Properties, Inc. v. Int'l Ass'n. of Machinists and Aerospace Workers,</u> 103 F. 3d 923, 925 (9th Cir. 1996).

**II. Did Arbitrator Escamilla Exceed his Authority and Fail to Interpret the CBA?**

Plaintiff VMH claims that arbitrator Escamilla's award fails to draw its essence from the CBA because the arbitrator rewrote several portions of the contract, added new terms, and ignored existing terms.  VMH alleges that this behavior exceeded the arbitrator's given authority under the CBA and urges the Court to vacate the award because of these defects.  WSNA, by contrast, argues that the award should be enforced because the arbitrator did not act beyond the scope of his authority and the award draws its essence from the CBA.  Because VMH is alleging that the arbitrator's interpretation of many different clauses within the CBA was defective, the Court examines these arguments clause by clause for greater clarity.

ORDER - 3

### A. Management Rights

Plaintiff contends that Arbitrator Escamilla misquoted the Management Rights clause of the CBA by omitting the exact language of the contract, which reads: "[t]he Association further recognizes the right of the Hospital to operate and manage the Hospital. . ." (Arb. Award at 4). In his analysis of this clause, Arbitrator Escamilla wrote:

> Article 18.1 initially provides the Employer with the basic right to 'implement improved operations methods and procedures.' Such right generally is a universal standard negotiated into management rights clauses. Additionally, the contract specifically extends that right by stating, 'The Association further recognizes the Hospital. . .to promulgate rules, regulations and personnel policies. . ." [sic]

(Id. at 19). The Management Rights clause at issue in this case is quite lengthy and it appears that Arbitrator Escamilla quoted only the portions of the clause in his decision that seemed to him to be most pertinent to the conflict at hand. Read in context, the fact that he did not quote the part of the clause that Plaintiff claims he erroneously ignored, is not evidence that he disregarded Plaintiff's right to manage the hospital. Indeed, the first line of Arbitrator Escamilla's discourse on the management rights clause states: "[e]mployers negotiate management rights clauses into contracts primarily to assure that employers retain the right to effectively and economically conduct its business operations."[sic] (Id.).

Plaintiff claims that Arbitrator Escamilla wrongly created a distinction between management of staff and care of patients when he decided that the immunization policy, as implemented, had more to with personnel matters than the operations decisions required to run a hospital. Here, Arbitrator Escamilla decided that because the Hospital decided to implement its immunization policy as a fitness for duty requirement, the policy directly affects the relationship between VMH and its employees, members of WSNA. Arbitrator Escamilla was not out of bounds with this determination, nor with his corollary determination that the policy as implemented created a new term or condition of employment that should have been negotiated. In making this determination, Arbitrator Escamilla relied on his knowledge of the collective bargaining process and the idea that, "[i]nherent in every collective bargaining agreement, employers recognize its obligation to bargain with the collective

bargaining representative over terms and conditions of employment. . ."[sic] (Id. at 20).  The arbitrator cited the Preamble and Article 1.1 of the CBA as support for this notion.

The Court finds that the Arbitrator was within his authority and captured the essence of the CBA when he relied on general labor practices and his own expertise to give context and meaning to the plain language of the Management Rights clause, the Preamble, and Article 1.1 of the CBA.  The Ninth Circuit has held that, "[a]n arbitrator is 'not confined to the express terms of the contract' but may also consider the 'industrial common law' which 'is equally a part of the collective bargaining agreement although not expressed in it.'" SFIC Properties, Inc., 103 F. 3d at 925.  In SFIC, the court of appeals reviewed an arbitration award where the arbitrator had inferred a just cause requirement into the parties' CBA.  The court of appeals found that inferring such a clause is an acceptable use of an arbitrator's power and satisfied the "essence" test because the inferred term was derived from a written contract provision.  The explained that, "[t]o infer a requirement is to find it already in the CBA, albeit only implied, rather than to add a new requirement." Id. at 926-927.  This case is analogous.  Because Arbitrator Escamilla has not added any new terms to the Management Rights, Preamble, or Clause 1.1 of the CBA, the Court defers to his analysis and finds that he did not exceed his authority or disregard the essence of the CBA in construing these provisions.

**B.  Zipper Clause**

Plaintiff also argues that the arbitrator exceeded his authority and failed to provide a plausible interpretation of the contract when he found that the zipper clause did not preclude the WSNA from requiring VMH to negotiate with it about the immunization policy.  The zipper clause reads, in pertinent part:

> The parties acknowledge that during the negotiations which resulted in this Agreement all had unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understanding and agreements arrive [sic] at by the parties after the exercise of that right and opportunity are set forth in this Agreement.  Therefore, the Hospital and the Association, for the term of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter not specifically discussed during negotiations or covered in this Agreement.

ORDER - 5

(Arb. Award at 5). In finding that VMH should have negotiated with WSNA about the policy, the arbitrator noted that, although no formal proposal was put forth concerning the issue during re-negotiation of the CBA in 2004, the grievance regarding the mandatory vaccination policy was pending at that time. For this reason, the arbitrator felt that it was, "absolutely clear that neither party believed that their dispute over the flu immunization policy disappeared by entering into a new contract. . ." (Id. at 21-22).

In support for its argument that the arbitrator did not appropriately interpret the contract, Plaintiff relies on Torrington Co. v. Metal Products Workers Union Local 1645 and Phoenix Newspapers. In Torrington, the Second Circuit affirmed a district court judge's decision to vacate an arbitration award where the arbitrator had awarded the union time off on election days based on the company's past practice, even though the CBA in that case was silent on this issue. Torrington, 362 F. 2d 677 (2nd Cir. 1966). In both Torrington and the case at hand, there had been negotiations during the collective bargaining process about the disputed issue that were not memorialized in the CBA. However, in Torrington, the negotiations regarding election-day time-off were completed during the collective bargaining process and the parties included no language regarding this issue in the contract because it was ultimately decided that there would be no time off on election days. Id. at 679. Here, the facts are distinguishable from those in Torrington because the dispute over the immunization policy has still not reached completion and it would be unfair to interpret the CBA in this case in a way that would keep WSNA from continuing to pursue an ongoing issue that was likely not memorialized in the CBA because the outcome was unclear.

VMH also cites Phoenix Newspapers, as support for the point that arbitrators must give proper effect to zipper clauses. Plaintiff notes that the Phoenix case, the arbitral remedy was vacated because it was not provided for in the CBA and the arbitrator, therefore, lacked authority to institute the remedy he chose. (Def's Mot. at 14). This point is inapposite here because Arbitrator Escamilla was given authority to decide whether or not VMH could enforce the mandatory vaccination policy by the parties' proposed issue statements. (Def's Ex. 1, at 3-4, Tr. pp. 9 -10, lns. 7-25; 1-3).

ORDER - 6

However, Phoenix Newspapers also deals with a second issue, which is more germane to this case. The arbitrator in Phoenix Newspapers was tasked with deciding whether or not the Union in that case has waived its right to bargain over changes in a unilaterally imposed manning policy when the Union filed a grievance regarding the policy. Phoenix Newspapers, 989 F. 2d at 1081. The arbitrator found that filing a grievance could not be interpreted as waiver of a right to bargain over an issue that "resulted in substantial changes in working conditions." Id. The conclusion reached by the Ninth Circuit in Phoenix Newspapers lends further support to the idea that issues in grievance at the time of the signing of the CBA cannot be considered waived. For this reason, the Court finds that the arbitrator was acting within his authority and plausibly interpreted the CBA's zipper clause.

**C. Past Practice**

Plaintiff also objects to Arbitrator Escamilla's failure, based on the past practice clause, to consider evidence regarding vaccinations required by VMH in the past. The past practice clause reads, in part:

> Any and all agreements, written and verbal, previously entered into between the parties hereto are mutually canceled and superseded by this Agreement. Unless specifically provided herein to the contrary, past practices shall not be binding on the Hospital or the Association. . .

(Arb. Award at 18). The arbitrator's decision, however, shows that he did look at evidence of past immunization requirements and decided that they were mutually agreed to by the Union and Employer. (Id.). In this case, he noted, the policy has not been agreed to and the fact that VMH has required other vaccines before is not binding evidence as to whether or not a policy requiring the flu vaccine may be unilaterally imposed. (Id.). Even assuming, *arguendo*, that the arbitrator should have looked at the evidence of past vaccine requirements as non-binding evidence that the flu vaccine could be required, the Court must treat the arbitrator's judgment with "great deference" and may not substitute its judgment on this topic for that of the arbitrator. United Food & Commercial Workers Union, Local 1119, AFL-CIO v. United Markets, Inc., 784 F. 2d 1413, 1415 (9th Cir. 1986). The parties have bargained for the arbitrator to interpret the CBA and the facts of this case and the Court

ORDER - 7

may not disturb the arbitrator's decision unless an egregious disregard for the contract is demonstrated or the arbitrator is beyond the bounds of his authority. SFIC, 103 F. 3d at 925, citing Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F. 2d 1200, 1205 n. 6 (9th Cir. 1989). Here, the arbitrator's interpretation of the past practice clause of the CBA is not an "egregious" misinterpretation of the past practice clause and does not demonstrate that the arbitrator went beyond the scope of the issues submitted to him.

**IV. Did Arbitrator Escamilla Err by Imposing an Irrational Award and Ignoring the Record?**

In addition to its allegations that the arbitrator impermissibly amended, added to, deleted from, and substituted his own views or outside sources into the CBA, all of which are disposed of above, VMH claims that arbitrator Escamilla did violence to the parties' agreement by imposing an irrational award and ignoring the record. VMH asserts that the arbitrator's determination that it may not unilaterally decide to give a mandatory flu vaccination to its staff significantly impedes the hospital's ability to discharge its main function and is therefor irrational. The hospital also states that it submitted to the arbitrator a great deal of evidence from experts that demonstrates the necessity of this policy and that it was error on the arbitrator's part to disregard this evidence as "a litany of experts." (Def's Mot. at 20-21).

First, VMH submits no evidence that it has been significantly impaired in discharging its main function since the arbitrator issued his decision. Virginia Mason continues to operate as a hospital, just as it has for many years before deciding to pursue a mandatory flu vaccination policy. VMH has not demonstrated that it has witnessed a decline in the number of patients admitted, or in the state of those patients' health once admitted. No evidence has been presented to the Court that VMH is likely to be shut down by the state unless it can implement this policy. Until similar scenarios are presented to the Court, it would be a falsehood to say that VMH is unable to fulfill its mission of caring for patients until it is able to mandatorily implement the flu vaccine among its staff.

Regarding the Plaintiff's contention that the arbitrator erred by ignoring the record of expert testimony presented to him, the record in this case simply does not bear out this allegation. At the

ORDER - 8

beginning of Arbitrator Escamilla's conclusion he states: "I recognize the impressive list of health authorities and experts who recommend health care workers be immunized because they are employed in a highly contagious environment and deal with patients who are at high risk of contracting the flu." (Arb. Award at 22). Although the expert reports submitted by Plaintiff are indeed impressive and persuasive, it was not the arbitrator's task in this case to determine whether or not mandatory flu immunizations for hospital staff are a good idea. His task was to look at the parties' collective bargaining agreement and to determine whether or not VMH could unilaterally impose such a policy under the language of that contract. Upon review of the arbitral decision, the arbitrator appears to have done just that.

**V.   Does the Award Violate Public Policy?**

Finally, Plaintiff VMH urges the Court to vacate Arbitrator Escamilla's award because it is a violation of public policy. VMH argues that the arbitrator's decision violates public policy concerns regarding hospital operation and medical ethics, as well as federal policy governing labor-management relations. Courts may vacate arbitration awards that violate public policy principles that are, "'explicit,' 'well-defined,' and 'dominant' as 'ascertained by reference to the laws and legal precedents and not from general consideration of proposed public interest.'" Southern California Gas Co., 265 F. 3d at 794-795. Defendant WSNA correctly observes that Plaintiff has not articulated an explicit and well-defined public policy that has been violated by the arbitrator's award. Plaintiff has cited no set of laws or legal precedents that support the notion that the flu vaccination should be mandatory. While it has submitted numerous expert reports and reports by medical agencies that support this point of view, this is not the type of authority that a court is directed to reference in deciding whether or not an arbitral award violates public policy.

Second, Plaintiff argues that Arbitrator Escamilla imported outside concepts, other than the plain language of the CBA, into his interpretation of the parties' agreement and that this type of behavior by an arbitrator violates public policy. This argument has been addressed by the Court in the previous sections of this opinion and need not be addressed here, except to say again that this

ORDER - 9

argument will not carry the day for Plaintiff VMH.  Accordingly, the Court does not find that Arbitrator Escamilla's award violated public policy.

**VI.  Attorney's Fees**

In the last section of its Motion for Summary Judgment, the Nurses' Union asks the Court to award it the costs and attorney's fees it has incurred during the course of this case.  Defendant bases this request on the notion that a party cannot refuse to abide by an arbitrator's award without justification and that such refusal constitutes bad faith.  (Def's Mot. at 8).  However, Defendant does not provide any evidence that Plaintiff ignored Arbitrator Escamilla's award and went on to fire unvaccinated nurses, that it forcibly vaccinated employees against their will, or that it took any other actions contrary to the arbitrator's award beyond this appeal.  Although the Court is not disturbing the arbitrator's award in this instance, the Court does not find that this appeal is a frivolous one, or that it was taken for the purpose of vexing Defendant.  For this reason, Defendant's request for costs and attorney's fees is DENIED.

**Conclusion:**

Because the Court does not find that the arbitrator's decision is procedurally defective, the Court upholds the award and must DENY Plaintiff's Motion, while GRANTING Defendant's Motion.  There is no evidence showing that VMH brought this motion for frivolous or vexatious reasons, so the Court will DENIES Defendant's request for a grant of attorney's fees.  There appearing to be no further issues for resolution in this case, the case is hereby DISMISSED.  The Clerk is directed to send copies of this order to all counsel of record.

Dated this 5th  day of January, 2006

Marsha J. Pechman
United States District Judge

ORDER - 10